John **ALLISON** and Geraldine Allison, Appellants,

v.

L.E. **ALLISON ESTATE**, Anna Irene Allison, Executor, and Anna Irene Allison, Individually, Appellees.

No. 94–1974.

Supreme Court of Iowa.

Feb. 19, 1997.

H. Michael Neary of the H. Michael Neary Law Office, Ottumwa, for appellants.

Richard H. Elwood of Elwood & Elwood, North English, for appellees.

Considered by LARSON, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

The court of appeals reversed the district court's judgment for the defendants in this action for contribution. Because the record reveals no inequality in the parties' sharing of their common debt, we vacate the court of appeals decision and affirm the judgment of the district court.

The facts are essentially undisputed. When John Allison died in 1961, his one-half interest in a 450–acre farm owned in common with his wife, Clela, was inherited by their two sons, John A. Allison and L.E. Allison, subject to a life estate in Clela. The brothers farmed the land as partners for many years. They also purchased additional ground so that their farming operation eventually covered approximately 1000 acres.

During the farm crisis of the 1980s, the brothers had difficulty servicing the debt on the purchase of the other farmland. In 1988, they entered into a restructure agreement with the Farm Credit Bank of Omaha. Both brothers and their spouses signed the agreement. (John and L.E. also signed on behalf of the Clela Allison trust.) Pertinent to this appeal, the restructuring called for a $140,000 mortgage on the 450 acres. The twenty-year mortgage required annual payments of $16,444.36. The debt has at all times been paid with revenue generated by the farm.

L.E. died in 1989. His wife, Irene, became executor of his estate and the trustee of a trust which holds his remainder interest in the 450 acres for the benefit of their children. John, meanwhile, also retired from active farming. Since 1990 his son-in-law, Dan Storm, has taken over day-to-day management of the operation.

The record reveals that Dan Storm pays annual cash rent of $8000 to Clela (a widow now in her mid–90s) for the use of the 450 acres. This is the same rent the Allison brothers had paid for the preceding twenty years. Uncontradicted testimony established that land of this type would normally rent for "upwards of $100 an acre," yielding a potential cash rental of $45,000 annually.

Dan Storm made the mortgage payments in 1990, 1991, and 1992. In their action for contribution, John and Geraldine claimed they are indebted to their son-in-law for these sums. They sought to recover one-half the payments from Irene, individually and as executor for the L.E. Allison estate.

The district court dismissed the plaintiffs' claims, concluding that the parties at all times intended that the debt would be retired with funds from the farming operation.

Moreover the court found no proof that John and Geraldine had in fact discharged any portion of the indebtedness themselves so as to entitle them to contribution from Irene or the L.E. Allison estate.

The plaintiffs appealed and we transferred the case to the court of appeals. That court reversed, satisfied the plaintiffs had established an indebtedness to their son-in-law that entitled them to contribution from the defendants. The court entered judgment in rem in favor of the plaintiffs and against the defendants for one-half the sum paid by Dan Storm on the mortgage in 1990, 1991, and 1992. We then granted Irene's petition for further review.

I. The doctrine of contribution rests upon principles of equity. *Lovrien v. Fitzgerald*, 245 Iowa 1325, 1330, 66 N.W.2d 458, 462 (1954). Thus our review on appeal is de novo. Iowa R.App.P. 4.

II. Fundamental to the law of contribution is the notion that "parties subject to a common liability or debt should contribute equally to its discharge." *Herter v. Ringland–Johnson–Crowley Co.*, 492 N.W.2d 672, 674 (Iowa 1992). The doctrine is grounded in fairness, resting on the idea that burdens should be equally shared. *Lovrien*, 245 Iowa at 1334, 66 N.W.2d at 464; *Mailliard v. Heffernen*, 418 N.W.2d 85, 86 (Iowa App.1987). A party's right to contribution, however, does not accrue until a disproportionate payment has been made. *Telegraph Herald, Inc. v. McDowell*, 397 N.W.2d 518, 519 (Iowa 1986); *Franke v. Junko*, 366 N.W.2d 536, 540 (Iowa 1985). Thus we have emphasized that the right to enforce a claim for contribution ripens "only upon a payment or its equivalent by the claimant discharging, satisfying, or extinguishing" more than an equitable share of the common obligation. *Dairyland Ins. Co. v. Mumert*, 212 N.W.2d 436, 439 (Iowa 1973) (quoting 18 Am.Jur.2d *Contribution* § 9, at 20–21 (1965)).

Unlike the court of appeals, the district court questioned the authenticity of John's alleged promise to repay his son-in-law for servicing the mortgage debt in 1990, 1991, and 1992. No executed promissory notes—

originals or copies—were tendered as evidence. John offered no proof that he had in fact discharged any portion of the "debt" prior to trial. To the contrary, the record revealed a lease negotiated by John that was *highly* favorable to Dan Storm and correspondingly unfavorable to the life tenant. The record established that the farm should cash rent for no less than $42,000 per year. Thus the court concluded the operation could easily retire the farm debt each year as well as provide payment for taxes, insurance, upkeep and more. Rather than assuming, as did the court of appeals, that these transactions indebted the plaintiffs to Dan Storm, the court instead observed "there is something wrong with this picture." [1]

The record amply supports the district court's skepticism. When the farm debt was restructured, the parties understood the financial obligation would be retired from proceeds generated by the farming operation.

No revenue from the farming operation has gone to Irene. For the years in question, it has evidently all gone to the plaintiffs' son-in-law, Dan Storm. He, not the plaintiffs, has discharged the parties' joint debt. In the absence of any proof the plaintiffs have been compelled to pay more than their share of the parties' common burden, the district court properly dismissed their petition for contribution.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

1. The situation also prompted the court to appoint a receiver "to protect the [trust] assets and prevent waste." That appointment is not contested on appeal.