**Edna FRANKE, Appellee,**

v.

**Thomas H. JUNKO, Appellant.**

**Thomas H. JUNKO, Appellant,**

v.

**Robert Charles FRANKE, Appellee.**

**Robert Charles FRANKE, Appellant,**

v.

**Thomas H. JUNKO, Appellee.**

No. 84–283.

Supreme Court of Iowa.

April 17, 1985.

Donald H. Gloe of Miller, Pearson, Gloe,
Burns, Beatty & Cowie, P.C., Decorah, for
appellant Thomas H. Junko.

Jay D. Villont of Donohue Law Office, P.C., West Union, for appellant Robert Franke.

Calvin R. Anderson of Strand, Anderson & Wilmarth, Decorah, for appellee Edna Franke.

HARRIS, Justice.

This suit resulted from a car-pickup collision on a country gravel road. Plaintiff wife, Edna, was a passenger in her husband's car and sued for personal injuries. Her husband, Robert, was driving at the time. Defendant owned and drove the pickup. The principal question on appeal involves the extent of defendant Junko's right of contribution against Robert. The trial court reduced Edna's award twenty-five percent on finding Robert was twenty-five percent negligent in the accident. We think it was inappropriate to reduce the judgment but that Junko is entitled to contribution from Robert proportional to Robert's twenty-five percent negligence.

It is disappointing to note that four years passed between the filing of the suit and its trial. The accident happened January 27, 1979. Snow was piled high along each side of the road, narrowing the open way to a width of about thirteen to fifteen feet. Cars using the road had left one set of tracks which were about equidistant between the walls of piled snow. At a point where the road was thus narrowed it rose to a crest.

According to the evidence taken in the light most consistent with the trial court's findings, Robert Franke's car was traveling north along this road at about 25 miles per hour. Edna was in the passenger seat. As the car approached the crest it straddled the east rut of the tracks. At the crest Robert first saw Junko's approaching truck driving towards him in the tracks cut by the previous cars. Robert drove as far to the right as he could but could not avoid the collision. There was sufficient space for the two vehicles to pass had Junko also pulled to his right. Junko's pickup truck was traveling 45–60 miles per hour and never veered from its head-on collision course.

The Franke vehicle was totally destroyed. Edna received personal injuries, suffers neck and upper back pains. As a result she has reduced ability to carry out her nursing duties and to pursue a number of social activities. The trial court fixed her damage at $30,000.

I. In some respects it is disputed whether the trial court made necessary findings. Plainly proximate cause could and should have been more specifically addressed. Also the findings should have detailed more of the matters which inhere in the decision. There is another difficulty in that a literal reading of the findings would seem to impute the twenty-five percent negligence of Robert to Edna, although there is no claim or showing that Edna was in any way responsible for Robert's driving at the time or in any way negligent.

On the other hand it is apparent the trial court holding presupposed a finding that negligence of both drivers was a proximate cause to the collision. It is also apparent the trial court did not think Edna was personally negligent. We read the findings accordingly. Junko did not file a motion to enlarge under Iowa R.Civ.P. 179(b). In the absence of such a motion he cannot complain on appeal of the absence of specific findings. *Fort Dodge Country Club v. Iowa-Illinois Gas & Electric Co.*, 231 N.W.2d 595, 597 (Iowa 1975); *Grall v. Meyer*, 173 N.W.2d 61, 65 (Iowa 1969).

Junko did file a motion for new trial in which he complained of the insufficiency of the findings. Normally a motion for new trial will not suffice as a rule 179(b) motion for preservation purposes. Only where the new trial motion is in actual "substance" a motion to enlarge, as in *Estate of Dull*, 303 N.W.2d 402, 404–05 (Iowa 1981), will a new trial motion serve in place of a rule 179(b) motion. We have no *Dull* situation here. Accordingly, we do not reverse on the basis of incomplete findings.

II. The trial court dismissed Junko's cross-petition for a fifty percent contribution from Robert (though, as mentioned, it did reduce Edna's recovery against Junko by twenty-five percent). Junko assigns the dismissal as error, relying on our traditional rule for contribution:

How do we apportion contribution? Ordinarily the total amount of the judgment is divided equally among those liable to the injured person.

*Schnebly v. Baker,* 217 N.W.2d 708, 731 (Iowa 1974). The question here is whether this rule should persist following our adoption of comparative negligence in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982).

It is argued that we should consider no change in the equal contribution rule in view of a later statutory change. The legislature has since provided that, in cases filed after July 1, 1984, contributions shall be in proportion to attributable fault. 1984 Iowa Acts ch. 1293, §§ 5, 6.

This suit was filed long prior to the effective date of the legislation. We of course give no retrospective application to the statute. We have often pointed out that it is the province of the legislature to declare what the law shall be but it is exclusively the province of the court to declare what the law is. *Richardson v. City of Jefferson,* 257 Iowa 709, 717, 134 N.W.2d 528, 533 (1965).

We think, however, it is appropriate that we consider the effect of *Goetzman* on our common-law fifty percent contribution rule. There is a contention that our holding in *Goetzman* contained a pledge that we would consider no further modifications in tort law beyond its holding that pure comparative negligence would replace contributory negligence. That there was no such pledge is demonstrated by both the majority and dissenting opinions in *Goetzman.* In the majority holding it was stated:

Like most other courts that have adopted the comparative negligence doctrine, we do not decide in advance collateral issues which eventually may be raised. Those issues can best be addressed and resolved in the context of concrete cases. 327 N.W.2d at 754. The *Goetzman* majority clearly contemplated our consideration of other and collateral issues on a case by case basis.

The dissenting opinion also did. Indeed the main thrust of the *Goetzman* dissent was to point out a number of "unanswered questions" facing Iowa's trial courts. It is inconsistent to suggest those unanswered questions were in fact answered by a holding that there would be no other changes in basic tort law.

■ Language in our later cases, particularly *Glidden v. German,* 360 N.W.2d 716, 721 (Iowa 1984) might seem to suggest a refusal on our part to make any changes before the effective date of the comparative fault act, Iowa Code section §§ 668.-1, .3 (1985). But that language should be read in context. It merely held that we should not give premature effect to the legislation. Our decisions in cases, such as this one, which arise before the act's effective date should be wholly uninfluenced by it. The statute should not control; neither should a valid contention be rejected because the legislature adopts the same view for later application.

We proceed then to consider whether the fifty percent rule should persist under *Goetzman.* We think the better, and growing, common-law view is the one adopted by the legislature.

[A]lthough the relative amount of comparable fault or causal negligence as between the tortfeasors does not affect their common liability to the injured person, it does affect their right to contribution, and ... such relative amount is to be considered in determining the proportionate share of the common liability which the respective tortfeasor shall bear.

18 Am.Jur.2d, *Contribution,* § 55 (1965); *see also* Annot. 53 A.L.R.3d 184, 204 (1973).

Such a view seems particularly appropriate upon the advent of comparative negligence in a jurisdiction previously commit-

ted to contributory negligence. Whatever equitable principles support the adoption of comparative negligence apply with at least equal vigor on the question of relative contribution. In a widely cited case the Supreme Court of Wisconsin reasoned:

> If the doctrine [of contribution] is to do equity, there is no reason in logic or in natural justice why the shares of common liability of joint tortfeasors should not be translated into the percentage of the causal negligence which contributed to the injury. This is merely a refinement of the equitable principle.

*Bielski v. Schulze,* 16 Wis.2d 1, 9, 114 N.W.2d 105, 109 (1962).

On the basis of our holding in *Goetzman,* we abolish our prior rule of equal contribution among joint tortfeasors and adopt the rule that contribution shall be exacted on the basis of comparable causal negligence.

III. The trial court's rejection of Junko's petition for contribution is defended on a second ground. Edna points out that Junko has paid nothing on his obligation, a payment she urges was necessary in order for a right of contribution to accrue. Edna is on solid ground in arguing that ordinarily the right "does not accrue until one tortfeasor has discharged more than his proportionate share of the common obligation." *Dairyland Insurance Co. v. Mumert,* 212 N.W.2d 436, 440 (Iowa 1973). *See also Lovrien v. Fitzgerald,* 245 Iowa 1325, 1330, 66 N.W.2d 458, 461 (1958). This is the general rule. 18 C.J.S. *Contribution* § 4 (1939); 18 Am.Jur.2d *Contribution* § 3 (1965).

The general rule, however, does not preclude a defendant from cross-petitioning for contribution in the original suit. This is a well recognized exception to the general rule which ordinarily makes payment a prerequisite before recovering contribution. 18 C.J.S. *Contribution* § 4 at p. 8. We note this is the rule adopted by the legislature for application in future cases. 1984 Iowa Acts ch. 1293, § 5. Under the rule Junko could not enforce any right of contribution against Robert until showing that he paid more than his own seventy-five percent of the obligation. But under the exception he can by cross-petition have his right to contribution determined in Edna's original suit.

Of course a finding that a tort defendant is entitled to contribution does not apply to or bar a plaintiff's right to a full recovery. *Rozevink v. Faris,* 342 N.W.2d 845, 850 (Iowa 1983). It was error for the trial court to dismiss Junko's cross-petition for contribution and was error to reduce Edna's recovery by twenty-five percent.

IV. Robert filed a cross-petition against Junko for damages to his car. The trial court, without explanation, dismissed the claim. Robert's motion under rule 179(b) was denied. We find merit in Robert's cross-appeal from the dismissal.

Under the trial court's finding of seventy-five percent causal negligence on the part of Junko and twenty-five percent on the part of Robert the only remaining question is damages. The only evidence on damages to the car was in Robert's testimony which set the value of the car at $6,500 before the accident. It could not by repair be restored to its prior condition and was sold for $2,500. Robert also testified to the loss of use of the vehicle.

We explained the measure of damages for motor vehicles in *Long v. McAllister,* 319 N.W.2d 256, 261 (Iowa 1982). The measure here falls under the third category:

> When the motor vehicle cannot by repair be placed in as good condition as it was in before the injury, then the measure of damages is the difference between its reasonable market value before and after the injury, plus the reasonable value of the use of the vehicle for the time reasonably required to repair or replace it.

*Id.*

Because we cannot discover from the trial court ruling the basis for rejecting Robert's claim, the case must be remanded

for further findings on damages. Any damages allowed will of course be reduced by twenty-five percent, the amount of Robert's causal negligence.

█ V. We have considered other assignments and find them without merit. There was sufficient evidence to support the trial court's damage award to Edna. There was ample evidence to support the trial court's determination that Junko was seventy-five percent at fault and Robert was twenty-five percent at fault.

VI. Edna is entitled to a $30,000 judgment against Junko. Junko is entitled to a twenty-five percent contribution, or $7,500, against Robert. The trial court is directed to make specific findings on Robert's damage claim against Junko. Costs on appeal are taxed ninety percent to Junko and ten percent to Robert.

AFFIRMED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON DEFENDANT'S CROSS–APPEAL; REVERSED ON PLAINTIFF'S CROSS–APPEAL; AND REMANDED.

All Justices concur except McGIVERIN, SCHULTZ, CARTER and WOLLE, JJ., who concur in part and dissent in part.

McGIVERIN, Justice (concurring in part and dissenting in part).

I respectfully dissent from division II and a portion of division VI and concur in the remainder of the majority opinion.

I believe that defendant Junko is entitled to fifty percent contribution from the joint tortfeasor driver, Robert Franke, for the $30,000 judgment to which plaintiff Edna Franke is entitled against Junko.

I. *Background Facts and Proceedings.*

The trial court found that Edna, the plaintiff passenger in the Franke car, sustained damages of $30,000 resulting from her personal injuries in the accident. There was no evidence of negligence on her part. Therefore, I agree with the majority that Edna should have judgment against defendant Junko for $30,000.

This accident occurred with both the Robert Franke and Junko vehicles failing to yield one-half of the traveled way to the other. The trial court found defendant driver Junko seventy-five percent responsible for the accident that caused Edna's injuries and Robert Franke, the driver of the car in which Edna was riding, twenty-five percent responsible.

Junko cross-petitioned against Robert for a one-half contribution by Robert to Junko on any judgment won by Edna against Junko. I conclude the trial court should have granted that relief to Junko based on the following reasoning.

II. *Equal Contribution Among Joint Tortfeasors.*

This negligence action was filed, tried and decided before July 1, 1984, when Iowa Code chapter 668 (1985) became effective. Therefore that statute does not and should not bear on the decision in this case.

Our rule on apportionment of equitable contribution has been that ordinarily the total amount of the judgment for the plaintiff is divided equally among those liable to the injured person. *Schnebly v. Baker,* 217 N.W.2d 708, 731 (Iowa 1974). In the present case both Junko and Robert have been found responsible for the accident that caused Edna's damages. No principle of law appears to prevent Robert from being liable for contribution to Junko on Edna's judgment.

The adoption of comparative negligence by this court in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982), did not and should not affect the question of equitable contribution among joint tortfeasors.

As we recently stated in *Glidden v. German,* 360 N.W.2d 716, 719 (Iowa 1984):

The holding of *Goetzman* was clear and specific. We supplanted contributory negligence with a pure form of comparative negligence in cases where contributory negligence had formerly been a complete defense. 327 N.W.2d at 754. *That holding* delineated a new tort doctrine for a specific category of cases and *displaced a single doctrine, that of*

*contributory negligence. Thompson v. Stearns Chemical Corp.,* 345 N.W.2d 131, 133 (Iowa 1984); *Rozevink v. Faris,* 342 N.W.2d 845, 849 (Iowa 1983). *It did not require a new and different division of a plaintiff's damage recovery among defendants,* as plaintiffs here suggest. *Goetzman* was a landmark decision, but it did not mandate a wholesale revision of Iowa tort law. *See, e.g., Thompson v. Stearns Chemical Corp.,* 345 N.W.2d at 133–34 (adoption of comparative negligence did not affect rule denying contribution from employer liable for worker's compensation); *Rozevink v. Faris,* 342 N.W.2d at 849–50 (adoption of comparative negligence did not abrogate doctrine of joint and several liability).

(Emphasis supplied.)

We also should decline as we did in *Glidden* to, in substance, adopt one part of the new comparative fault act prematurely. The majority, although it cites other authorities, would adopt on a common law basis, for the narrowing group of unresolved cases that were filed before July 1, 1984, the substance of Iowa Code sections 668.5 and .6 (1985).

As we said in *Glidden,* 360 N.W.2d at 721, concerning another provision of chapter 668:

> [I]t is just one of the comparative fault act's package of significant changes in Iowa tort law. These changes should be read and applied together, not interpreted as isolated principles reflecting separate expressions of public policy.

In addition, in *Speck v. Unit Handling Division,* 366 N.W.2d 543 (Iowa 1985), filed today, we again refused to apply comparative fault principles under new Iowa Code chapter 668 to a strict liability in tort case that was filed before July 1, 1984. There the contention was made that *Goetzman* required such an application. We disagreed and said:

> When this court in *Goetzman* adopted comparative negligence, it did not jettison all preexisting principles of tort law. The holding was narrow.... As we

thereafter said in *Rozevink v. Faris,* 342 N.W.2d 845, 849 (Iowa 1983), "that holding delineated a rule for a specific category of cases and displaced a single doctrine, the doctrine of contributory negligence."

366 N.W.2d at 545.

We went on to say that we would decline to apply new chapter 668 piecemeal to cases filed before July 1, 1984, because to do so

> would complicate the many cases arising in this interim period and create a truly anomalous situation in Iowa tort law if we ignored the statute's explicit wording concerning its effective date on some issues but complied with that expressed legislative intent on other issues.

366 N.W.2d at 546. We also listed several cases where we refused to overturn prior tort law principles even though urged to do so after *Goetzman. See Glidden v. German,* 360 N.W.2d 716, 721 (Iowa 1984); *Campbell v. Van Roekel,* 347 N.W.2d 406, 409–11 (Iowa 1984); *Thompson v. Stearns Chemical Corp.,* 345 N.W.2d 131, 136 (Iowa 1984); *Rozevink v. Faris,* 342 N.W.2d 845, 850 (Iowa 1983).

III. *Necessity for Reasonable Stability in the Law.*

I would keep our body of common law tort principles intact after *Goetzman,* as stated in *Glidden* and *Speck,* and not change them piecemeal prior to the wholesale revision of Iowa tort law in the new Iowa Code chapter 668, which applies only to cases filed after July 1, 1984.

The action of the majority in this case only adds to the confusion of the bench and bar in determining the principles of tort law that apply to a given case. It is no service to the bench and bar to keep the common law in a state of flux before chapter 668 and its comprehensive revision of tort law takes effect as scheduled by the legislature.

SCHULTZ, CARTER and WOLLE, JJ., join this concurrence in part and dissent in part.